IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JORGE GOLDEN and ANTHONY YBARRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUALITY LIFE SERVICES, LLC, APRIL LINCON AND SALLY CHAVEZ, INDIVIDUALLY,<br><br>Defendants. | § § § § § § § § § § § § § § § | CA No. 2:22-cv-579-GJF-GBW |

## JOINT MOTION TO APPROVE CLASS ACTION SETTLEMENT

Plaintiffs Jorge Golden and Anthony Ybarra and Defendants Quality Life Services, LLC, April Licon and Sally Chavez (the "Parties") submit this Joint Motion to request that the Court grant preliminary approval to their settlement agreement per Rule 1-023(E) NMRA. In support thereof, the Parties state as follows:

### INTRODUCTION

The Parties have reached a settlement of this class action wage case and respectfully submit their Settlement Agreement (Exhibit 1) for the Court's approval.[1] The Parties assert that the agreement satisfies all criteria for approval. The Agreement is fair in broad terms because it constitutes a reasonable compromise of the disputed alleged unpaid overtime wages for each individual identified in the Wage Payment Table in the Agreement (each a "Class Member" or "Collective Action Member") who chooses to participate in the Settlement. Therefore, the Parties respectfully move the Court for an order:

---

[1] The attached Settlement Agreement has been executed by the Representative Plaintiffs; Defendants are in the process of executing the Agreement.

1. Granting preliminary approval to the Settlement Agreement;

2. Approving the attached Notice of Settlement (Exhibit 2) and requiring Plaintiffs to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to object to the Settlement, and permitting Class Members forty-five (45) days from the date of Notice mailing to object to the Settlement; and

3. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

## **PROCEDURAL HISTORY**

On August 3, 2022, Plaintiff Jorge Golden filed the above-captioned class action/collective action lawsuit against Defendants alleging that Defendants failed to make required overtime wage payments by incorrectly classifying all direct support personnel ("DSPs") as independent contractors and therefore exempt from the overtime wage requirements of the New Mexico Minimum Wage Act, § 50-4-22, *et. seq*. ("NMMWA") and the Fair Labor Standards Act, 29 USC 201 *et seq* ("FLSA").

Plaintiffs filed a hybrid FLSA Motion for Conditional/Class Certification on December 22, 2022. ECF No. 27. On April 30, 2023, the Court granted Plaintiffs' motion for Rule 216(b) collective action treatment and denied without prejudice Plaintiffs' request for Rule 23 class certification. ECF No. 52. After additional discovery, Plaintiffs moved again for class certification of their NMMWA class action, and this Court granted certification of the NMMWA class action in its November 22, 2023 Order. ECF No. 148.

Therefore, Plaintiffs are representatives of two classes: the collective action class under 29 U.S.C. § 216(b) ("collective action") and the class action for the NMMWA claims ("class action").[2]

---

[2] The parties agree that damages that could possibly be awarded under the FLSA are duplicative of the more generous damages available under the NMMWA. Therefore, persons who are members of the NMMWA class action and the collective action will receive damages pursuant to the NMMWA.

After extensive efforts to provide notice to both classes (three different series of notice were ultimately distributed), after written discovery had been exchanged, and after numerous depositions, the parties agreed to mediate the case in Las Cruces, New Mexico, on June 17, 2024, in front of Chief Magistrate Judge Wormuth. At the mediation, the parties engaged in sustained, arms-length negotiations. As a result of the mediation, the Parties have agreed to the settlement terms described below.

## SUMMARY OF THE SETTLEMENT TERMS

To determine the value of Plaintiffs' and each Class Member's claims, the Representative Plaintiffs and Class Counsel reviewed those time-worked and wages-paid records that Defendants provided, calculated all damages owed to both classes, and provided those calculations both to opposing counsel and to Chief Magistrate Judge Wormuth. Plaintiffs hired staff to ensure redundancy and accuracy in these calculations. Plaintiffs and Class Counsel created a consistent methodology based on representative testimony and payroll records to calculate the reasonable value of overtime wages owed to each Class Member. Based on the documents produced and interviews of Class Members, and after prolonged, arms-length negotiations, the Parties agreed that Defendants will pay a reasonable compromise of the disputed alleged unpaid overtime wages along with a portion of liquidated damages and interest (minus costs distributed on a pro-rata basis) at issue: $733,597.87. Ex. 1, Settlement Agreement.

The Parties further agreed that Defendants will pay $1,311.48 of the Gross Settlement Amount to the two collective action members not a part of the class action. *Id*. The Parties have also agreed that Defendants will pay $14,000.00 as an incentive award to Plaintiff Jorge Golden and $10,000.00 to Plaintiff Anthony Ybarra as the Class Representatives, $367,454.57 for attorney's fees and $16,636.07 in costs. *Id.* Defendants will also pay the employer's portion of

3

required withholding and payroll taxes for the portion that is assigned as unpaid wages. The Class Representatives, Class Members and Collective Action Members will be responsible for their remaining, and respective, federal, state and local tax obligations.

Upon the Court's authorization, Plaintiffs will disseminate the Notice (Exhibit 2) to the Class Members to inform them of the settlement terms and to afford them the opportunity to object to the Settlement within forty-five (45) days from the date of Notice mailing.

By February 1, 2025 or thirty (30) days after the Court's final approval of this settlement agreement, whichever is later, Defendants will pay the gross amount ("Gross Settlement Amount") of $1,150,000.00, pursuant to wire instructions provided in writing by the Settlement Administrator, to be deposited into the Settlement Fund, which will effectuate payment of wage damages to Class and Collective Action Members, incentive awards to the Class Representatives, and attorney fees and costs to Class Counsel. Any class member who has not cashed his/her check by 120 days after mailing will be deemed to have forfeited his/her right to any damage award.

After 120 days, the administrator will notify the Parties of any uncashed checks from Total Damage Awards exceeding $500.00. Within thirty (30) days of notification, the Settlement Administrator will then redistribute this amount on a pro-rata basis, to those class members who have cashed their settlement checks.

After 120 days, the administrator will notify the Parties of any uncashed checks from Total Damage Awards below $500. Within thirty (30) days of notification, the Settlement Administrator will distribute this amount to Defendants' counsel, which will revert back to Defendants.

In consideration of the monetary interest created to benefit the Class, Collective action members who opted-in to the FLSA collective action will release Defendants from any and all wage-and-hour-related claims, rights, demands, liabilities, and including causes of action arising

4

under *the Fair Labor Standards Act,* 29 U.S.C. § 201, *et seq*. Class action members will release Defendants from any and all wage-and-hour-related claims, rights, demands, liabilities, and including causes of action arising under *the New Mexico Minimum Wage Act*, NMSA 1978 § 50-4-22 *et seq.*. *Id.* The two named Plaintiffs, Jorge Golden and Anthony Ybarra, both of whom are receiving incentive payments as well as other recovery, will sign a general release, as set forth in Exhibit 1, releasing the Defendants from any and all legal claims and causes of actions.

## ARGUMENT

I. **The Court Should Find that the Settlement Agreement is Fair and Reasonable for the Purposes of Fed. R. Civ. P. 23 and that the Proposed Notice of Settlement is Sufficient under Rule 23(c).**

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,' because settlement of complex disputes "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Acevedo v. Sw. Airlines Co.,* Civil Action No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (citing *Armstrong v. Bd. Of Sch. Dirs.,* 616 F.2d 305, 313 (7th Cir. 1980). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of the claims of a certified class. "The authority to approve a settlement of a class ... action is committed to the sound discretion of the trial court." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id.*

In deciding whether to approve class action settlement agreements, courts must ask whether: the proposal was negotiated at arm's length and fairly negotiated; the relief for the class is adequate considering the costs, risks, and delay of trial; the effectiveness of methods of

distribution of relief to the class; and the terms of any award of attorney's fees is fair. Fed. R. Civ. P. 23(e)(2).

In the Tenth Circuit, the Court must also consider additional factors which partially overlap with the Rule 23(e)(2) factors: (1) that the proposed settlement is honestly negotiated; (2) that questions of law and fact exist and place outcome of litigation in doubt; (3) that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation; and (4) judgment of the parties that the settlement is fair. *Rutter & Wibanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). As discussed below, the Settlement meets the standards for both preliminary and final approval. As a result, Plaintiffs and Defendants believe that the Settlement should be preliminarily approved so that notice can be provided to Class Members.

Additionally, this case involves the settlement of an FLSA collective action. In the context of settlement of an FLSA collective action, a district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982). If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *Fulton v. TLC Lawn Care, Inc.*, CIV.A. 10–2645–KHV, 2012 WL 1788140, at *2 (D. Kan. May 17, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1354). In applying this analysis, the district court should examine four factors: (1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair?

*Lynn's Food Stores*, 679 F.2d at 1353–54. *See also Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127–28 (D. Colo. 2016) (same).

All of the factors set forth above for determining the reasonableness of a collective action settlement have been addressed, *infra*, in the context of the class action settlement analysis. Indeed, courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e). *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130 (D. Colo. 2016). *See also Gambrell v. Weber Carpet, Inc.*, No. 10–131–KHV, 2012 WL 5306273, at *3 (D.Kan. Oct. 29, 2012).

For the same reasons that the Court should approve the settlement of the class action, the Court should likewise find that the Parties' Settlement easily meets the standards for determining that a collective action settlement is reasonable, and warrants approval under the FLSA.

1. <u>The Agreement was reached using arm's-length negotiations.</u>

In this case, the Parties jointly seek to settle this matter and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Id*. As the Court is well aware, this action has been pending for almost two years. Since the inception of this case, the Parties have extensively briefed numerous contested issues, including class certification (twice) as well as a myriad of discovery disputes. In addition, the Parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." *Id*. These factors support the integrity of the Parties' settlement negotiations.

Here, the parties engaged in "extensive, arms'-length and non-collusive negotiation between capable counsel…" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1240–47 (D.N.M. 2012). Their negotiations spanned significant pre-mediation communication and negotiation in front of Chief Magistrate Judge Gregory Wormuth on the terms of the agreement. Under such circumstances, the Court may presume the settlement to be fair, adequate, and reasonable. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

2. <u>The settlement agreement provides adequate relief for the parties considering the costs, risks, and delay of further litigation.</u>

As both the NMSA 1978 § 50-4-22 and 29 U.S.C. § 201, *et seq*. make clear, Class Members were entitled to significant overtime wages if they prevailed on the issue of whether they were independent contractors. They also would have obtained no recovery if the Court ruled against them on the issue of independent contractor status, thus rendering the case a relative winner-take-all scenario, complete with the attendant risks. Accordingly, the Parties agreed to a settlement value that constitutes a reasonable compromise of the issues in the case, including independent contract vs. employee status, time worked, unpaid wages, liquidated damages, interest[3], and fees and costs that – at trial – would be taxed against Defendants if plaintiffs prevailed.

The parties have presented the Court with significant portions of the record in this case, including briefing from (1) Plaintiffs' Motion for Certification filed on December 22, 2022, ECF No. 27 as well as (2) Plaintiffs' Renewed Motion for Class Certification filed on August 18, 2023, ECF No. 95. The parties engaged in extensive discovery encompassing thousands of pages of

---

[3] Interest is not an element of damages under the FLSA. The Supreme Court has "held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir. 1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715-16, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). The NMMWA permits such damages. Similarly, the FLSA permits an award of liquidated damages up to one times the unpaid wages. The NMMWA requires liquidated damages of two times the unpaid wages amount.

organizational records, took multiple depositions, and generated a significant number of affidavits and/or declarations throughout the pendency of this matter.

Defendants produced, and the Class Representatives and their counsel thoroughly reviewed, all available records showing the duties performed by the class, the amount and extent of control exercised by Defendants over the class, and the number of hours worked by, and the wages paid to, Plaintiffs and the Class Members. Class Counsel also personally surveyed a large portion of the Class Members to assess representative testimony on duties, Defendants' control over their work, and the number of hours worked by employees over the years. Counsel represent to the Court that both liability and damages were thoroughly vetted through discovery and settlement negotiations.

Given the substantial dispute as to whether Plaintiffs were independent contractors or employees, the parties' respective success at trial would rely on the credibility and consistency of testimony regarding each of the elements courts employ to analyze independent contractor classifications, including but not limited to the Defendants' relative control or lack thereof over Plaintiffs' work. The settlement inures fairly, reasonably, and to the benefit of the class because, among other things, it avoids the attendant risks associated with resolution of these factual and credibility determinations at trial, while giving ample relief to class members.

In favor of reasonableness, Plaintiffs have ensured that most of the settlement is non-reversionary – so Defendants will not benefit from class members who may not cash their distribution checks unless the amount of the distribution check is under $500. The settlement administrator will take all unclaimed funds over $500 from the first distribution and re-distribute that amount to Class members who took the initiative to cash their first checks. This procedure

will "get more money into the hands of" class members. *In re Thornburg Mortg.,* 912 F.Supp. 2d at 1247.[4]

Next, Plaintiffs, class members, and collective action members faced risks that had to be weighed as part of a settlement. First, they faced the possibility that the Court might have found that Plaintiffs and Class Members were owed the same amount of unpaid wages represented in this settlement, more than the amount encompassed in this settlement, or nothing at all.

Moreover, the damages calculations had to be tempered by the financial ability of Defendants to pay all damages owed as calculated by Plaintiffs. A judgment in favor of Plaintiffs could have been uncollectable. Therefore, the parties balanced the solvency of Defendants with the likelihood of success to establish the reasonable compromise listed in the Settlement Agreement. Indeed, even after deduction for attorney's fees, class members will receive well over their unpaid wages and a significant portion of liquidated damages.

Because the Settlement represents a reasonable compromise of the wages and other damages due to the class, and given the uncertainty of litigation risks, as set forth above, further litigation would only increase risk to the class and would dramatically increase the cost and expenses of all parties.

There was also an overriding public interest in settling this class action. The litigation has been pending for several years, the parties have incurred significant expenses, and further litigation "would require significant judicial and party resources" to try the case. *In re Thornburg,* 912 F.

---

[4] *See also Lagunas v. Young Adult Inst., Inc.*, No. 23-CV-00654-RS, 2024 WL 1025121, at *4 (N.D. Cal. Mar. 8, 2024) ("**weighing in favor of preliminary approval is that the proposed settlement is non-reversionary**") (emphasis added); Rothstein, Barbara J. & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges,* Federal Judicial Center (2005) (available at https://www.uscourts.gov/sites/default/files/classgde.pdf) ("A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to agree to an inflated settlement amount as a basis for counsel fees. Instead of approving a settlement with a reversion clause, consider encouraging the parties to use an alternative approach, such as prorating the total settlement amount among the class members who file claims. Prorating is a straightforward way to avoid the possibility of unclaimed funds and has become a standard practice in class settlements.").

Supp. 2d at 1240–47. This is even more true should one of the parties appeal a trial loss, which, in addition to increasing both expenses and fees, could serve to delay resolution of this matter by one or possibly even two years.

Because both the NMMWA and the FLSA contain fee-shifting provisions[5], and because Plaintiffs were more than likely to prevail at trial on liability, Defendants are able to avoid what would surely have been tens of thousands of dollars in defense counsel and Class Counsel attorneys' fees related to a trial of the merits of this action. Moreover, should the matter have proceeded to trial and Plaintiffs prevailed, Defendants may have been facing a damage award that could have been financially catastrophic.

Given the disputed factual and legal issues in the case, the settlement represents a reasonable resolution of this action and eliminates the risk that the Class might otherwise recover nothing. Therefore, the recovery represented in this settlement agreement is fair and adequate, and constitutes a reasonable compromise of Class Members' claims.

3. <u>The Method of Distribution is adequate.</u>

The Court must also ensure that the proposed settlement provides an adequate method of distribution of funds. *Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500 GBW/GJF, 2022 WL 2304146, at *6 (D.N.M. June 27, 2022).

Here, the Court does not have to consider whether the claim process is adequate because the parties have agreed that – upon approval of the Agreement following a fairness hearing – checks will be directly sent to class members without the need to submit a claim. Over the period of two years, class members have received two notices –first for participation in the collective

---

[5] "The court in any action brought under Subsection D of this section **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant." § 50-4-26(E) NMSA (emphasis added).

action and, second, for the opportunity to opt-out of the class action.[6] Plaintiffs and the settlement administrator have continually updated contact information for class members in that period of time. Additionally, the settlement administrator will use skip traces to ensure that he has access to the most up-to-date address information for class members. The second redistribution process will be just as efficient and effective as the first distribution process, and will utilize the same methods as the first distribution.

This process is as "simple, straightforward, and nonburdensome as possible." *Cisneros*, 2022 WL 2304146, at *6 (citing *In re Samsung Top-load Washing Mach. Mktg., Sales Prac. & Prods. Liab. Litig.,* MDL Case No. 17-ml-2792-D, 2020 WL 2616711, at *16 (W.D. Okla. May 22, 2022) (aff'd, 997 F.3d 1077 (10th Cir. 2021)).

4. Counsel are Experienced and Believe the Settlement to be Fair and Reasonable

Class Counsel has broad experience in wage and hour class action practice. *See* Exhibit 3, Declaration of Christopher Benoit; Exhibit 4, Declaration of Douglas B. Welmaker. Mr. Benoit and Mr. Welmaker have, combined, over 25 years of experience litigating class wage claims on behalf of low-wage workers. Defense counsel is also experienced in wage and hour litigation – having worked in the labor and employment law field since 2002, and having represented both plaintiffs and defendants in wage and hour class action litigation.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). *See also McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *37-38 (W.D. Okla. Oct. 27, 2008 (same). "Here, the parties' counsel — among whom are attorneys with substantial

---

[6] In addition, persons who opted-out of the class action were given a second opportunity to revoke their opt-out form through a corrective notice in March 2024. ECF No. 184.

experience in complex class action litigation and [employment] class actions — unanimously support this settlement." *Lucas*, 234 F.R.D. at 695.

Class counsel believes that this settlement is fair and reasonable. Defense counsel also agrees that the settlement is fair and reasonable, especially given that the amount of the settlement and several key terms were based on the assessment of Chief Magistrate Judge Wormuth, who has significant knowledge and experience with class actions in New Mexico.

As such, this factor further supports granting preliminary approval.

5. <u>The Proposed Notice of Settlement is The Best Practicable Method to Notify the Class Members and to Determine the Reaction of Parties Interested in the Settlement.</u>

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1) requires the Court to ensure that the class receives notice of the proposal and has an opportunity to object to the class. Pursuant to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "While due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion." *Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993), overruled in part on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). "The standard for the settlement notice under Rule 23(e) is that it must "fairly apprise the class members of the terms of the proposed settlement and their options." *Id*. The proposed notice here comports with Rule 23(e).

Here, the Parties have agreed upon a proposed class notice, and seek an order requiring them to disseminate the attached <u>Notice of Settlement</u> (Exhibit 2) to inform the Class Members of the terms of the Settlement, and to provide all Class Members with the opportunity to object to the Settlement.

The Administrator will both mail and email the Notice identified as Exhibit 2 to the Class Members' last known physical and email address, which is the best practicable method to provide Class Members with the Notice. The Parties further request that the Court permit Class Members forty-five (45) days from the date of mailing to object to the Settlement. This provides Class Members a sufficient amount of time to consider whether to object. The Parties finally request that the Court set a final fairness hearing at its earliest convenience after sixty (60) days subsequent to its preliminary approval of the Agreement so that any objectors to the Settlement may be heard. After the final fairness hearing, the Court will have the information it needs, including whether any class members object to the settlement, to evaluate the reaction of Parties interested in the Settlement. This notice complies with Rule 23(e)(1).

## II. The Court Should Rule that the Service Award is Reasonable

"[N]amed plaintiffs...are eligible for reasonable incentive payments" as part of a class action settlement. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Incentive awards are typical in class action cases." *Acevedo v. Southwest Airlines Co.,* 2019 WL 6712298, at *4 (citing 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008)).

Courts have recognized that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235–36 (10th Cir. 2009). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id*. at 235 (citations omitted).

The parties agree that the requested incentive award is reasonable and in line with similar awards approved in other cases. As this Court noted in *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021), the requested incentive payments proposed here are in the range of incentive payments approved in similar wage and hour cases, citing to, *inter alia*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 WL 5704016, at *2, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving incentive award of $20,000.00); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 474936, at *7, 2007 U.S. Dist. LEXIS 8476, at *16-17 (N.D. Cal. 2007) (district court awarded each of the class representatives in an overtime class action a service award of $25,000.00); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (approving a $50,000 service award); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (award of $50,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000).

Additionally, the Notice of Class Action Settlement mailed to the class members will include information about the proposed incentive award. *See Key v. Butch's Rat Hole & Anchor Serv.*, 2022 U.S. Dist. LEXIS 26795, *10 (D. New Mexico, 2022) (taking into account the fact that disclosure of the incentive award was contained in the notice to the class in analyzing and approving incentive award).

When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $14,000.00 service award to Mr. Golden here is appropriate because Mr. Golden expended significant efforts during this litigation to ensure that the action was brought to a successful conclusion on behalf of the Class. Mr. Golden worked closely with Class Counsel to develop facts, review documents and data produced, discuss case strategy and engage in settlement negotiations. He took time off from work to prepare for significant actions in the case and was always responsive to Class Counsel's queries.

Mr. Ybarra, though not as involved in the case for the same length of time as Mr. Golden, also assisted in reviewing facts, maintaining communication with other class members, was responsive to Class Counsel's questions and appeared for major developments in the case. Both Mr. Golden and Mr. Ybarra took on substantial risk of retaliation by other employers in the region by coming forward with reports of Defendants' wage and hour law violations when no other employees were willing to do so. Both Mr. Golden and Mr. Ybarra advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations. The incentive awards sought here are reasonable. *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC,* No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021) (approving incentive payment of $25,000) and gathering citations of other cases with similar awards in "similar wage and hour cases"); *Cook,* 142 F.3d at 1016 (7th Cir.1998) (approving incentive award of $25,000 for named plaintiff); *Glass v. UBS Fin. Servs., Inc.*, No. C–06–4068 MMC, 2007 WL

221862 (N.D.Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 incentive award to named plaintiff).

### III. The Court Should Find that the Attorney Fee Award is Appropriate

Plaintiffs move separately and concurrently for approval of the attorney fee provisions of the Settlement.

### CONCLUSION

The settlement agreement should be approved by the Court. The terms of the settlement have been approved by the Parties and their respective counsel. The settlement was negotiated at arms' length with the assistance of Chief Magistrate Judge Wormuth. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

The Settlement Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for several years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard fought negotiations. Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members.

For the reasons set forth above, the Parties respectfully request that the Court enter an Order:

1. Granting preliminarily approval to the Settlement Agreement;

2. Approving the attached Notice of Settlement (Exhibit 2) and requiring Plaintiffs to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to object to the Settlement, and permitting Class Members forty-five (45) days from the date of Notice mailing to object to the Settlement; and

3. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

Respectfully submitted,

**WELMAKER LAW, PLLC**

*/s/ Douglas B. Welmaker*
**Douglas B. Welmaker**
New Mexico Federal Bar ID 22-213
409 North Fredonia, Suite 118
Longview, Texas 75601
Tel: (512) 799-2048

AND

**BENOIT LEGAL, PLLC**
The Law Center
311 Montana, Suite B
El Paso, Texas 79902
(915) 532-5544
Fax (915) 532-5566

*/s/ Christopher Benoit*
**Christopher Benoit**
New Mexico No. 15097
chris@coylefirm.com

AND

**MOODY & STANFORD, P.C.**

/s/ *Repps D. Stanford (by permission)*
Repps D. Stanford
Christopher M. Moody
8500 Menaul NE, Ste. A-210
Albuquerque, NM 87112
Mailing Address: P.O. Box 91853
Albuquerque, NM 87199
(505) 944-0033
stanford@nmlaborlaw.com
moody@nmlaborlaw.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on all counsel of record by electronically filing with the Clerk of the Court on July 17, 2024.

*s/ Douglas B. Welmaker*
Douglas B. Welmaker