# EXHIBIT 1

### SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made by and between Jorge Golden and Anthony Ybarra ("Plaintiffs") and April Licon, Sally Chavez, and Quality Life Services, LLC ("Defendants"), and subject to the final approval of the Court. Plaintiffs and Defendants are collectively referred to herein as "the Parties."

### **RECITALS**

A. A dispute arose between Plaintiffs and Defendants due to alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New Mexico Minimum Wage Act ("NMMWA"), §§ 50-4-22 *et seq*. On August 3, 2022, Plaintiffs filed the above-captioned class action lawsuit against Defendants ("the Action").

B. Plaintiffs are representatives of two classes. First, they are representatives of the collective action class under 29 U.S.C. § 216(b) ("collective action") which was certified by this Court on April 30, 2022. Second, Plaintiffs are also representatives of the class for the NMMWA claims which was certified by the Court under Fed. R. Civ. P. 23 ("class action") on November 22, 2023.

C. Plaintiffs and Defendants desire to fully and finally settle and completely resolve all claims which were pleaded in the Action.

D. Plaintiffs and their counsel have fully analyzed and evaluated Plaintiffs' respective claims and contentions, Defendants' defenses, and this Settlement as it affects the named plaintiff and the members of the alleged plaintiff class. Plaintiffs and counsel are satisfied that the terms of this Agreement are a fair, reasonable, adequate, equitable, and complete settlement and resolution of all claims that were pleaded in the Action; and that a settlement of the Action on the terms set forth below is in the best interest of the plaintiff class.

E. The Parties have engaged in substantial arms-length negotiations, including mediation with Chief Magistrate Judge Gregory Wormuth, and have reached an agreement to settle the Action as a class action under the terms and conditions set forth in this Agreement, subject to

the Court's certification of a settlement class and preliminary and final approval of the Settlement and this Agreement.

F. This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Action or in any other action or proceeding or of any fault, negligence, or breach of any alleged duty on the part of any party, and all such allegations are expressly denied. This Agreement is made without admission or waiver of any substantive or procedural fact, claim, or defense by any party, and shall not be used in evidence in any judicial or administrative proceeding, except to enforce the terms hereof.

G. This Agreement is subject to, and its effectiveness conditioned upon, final approval by the Court.

## **TERMS**

**NOW, THEREFORE**, in consideration of and in reliance upon the recitals, promises, covenants, understandings, and obligations set forth in this Agreement, Plaintiffs and Defendants hereby agree as follows:

1. **Class Members.** With the exception of two class members – Jasmine Padilla and Teresa Benavidez – all members of the collective action are also members of the NMMWA class action. The parties agree that damages that could possibly be awarded under the FLSA are duplicative of the more generous damages available under the NMMWA. Therefore, persons who are members of the NMMWA class action and the collective action will receive damages pursuant to the NMMWA.

2. **Class Definition.** The parties understand that – based off of the orders of the Court – the NMMWA and FLSA collective action class members will include "All current and former Direct Support Personnel staff members of Quality Life Services, LLC, April Licon, and/or Sally Chavez who worked over forty hours during any week from August 3, 2019, to the present and

Case 2:22-cv-00579-GJF-GBW   Document 194-1   Filed 07/17/24   Page 3 of 14

who were not paid overtime wages for overtime hours worked." The parties agree that all class members have received notice of the class certification under the FLSA and, separately, under the NMMWA. The class members have had a fair opportunity to opt-in to the FLSA collective action following certification of the FLSA claim. The class members have had a fair opportunity to opt-out of the NMMWA class action following certification of the NMMWA claim. The parties agree that the NMMWA class members include the persons listed in Exhibit A to this Agreement. The parties agree that the FLSA class members include the persons listed in Exhibit C to this Agreement.

3. **Settlement Administrator.** For purposes of this Agreement, "Settlement Administrator" shall refer to Optime Administration, LLC who will administer the settlement distributions of this class. The Settlement Administrator will be responsible for:

   a. using existing databases and/or other appropriate commercial or public sources to obtain up-to-date address information for individuals identified on Exhibit A hereto prior to transmitting the Notice Form approved by the Court in the Court's preliminary approval order;

   b. printing and transmitting the Notice Form approved by the Court in the Court's preliminary approval order;

   c. maintaining accurate records of the Settlement Administrator's activities, including (a) mailing dates for the Notice Form, (b) dates of mail returned as undeliverable, (c) dates of receipt by the Settlement Administrator of completed Objection correspondence, (d) dates of transmission and receipt of any written and/or electronic communications between the Settlement Administrator and any Named Plaintiff or Class Member, (e) all Settlement

3

Administration Expenses and dates incurred, and (f) all deposits, disbursements, and other deductions from the Settlement Fund, including Settlement Administration Expenses, and dates for each transaction;

d. providing to Plaintiffs' Counsel and Defendants' Counsel upon request reports summarizing all activities of the Settlement Administrator in effectuating and implementing the terms of this Agreement, including (a) total numbers of Notices transmitted and Notices returned as undeliverable, (b) a description of other written or electronic communications between the Settlement Administrator and any Named Plaintiff or Class Member, (c) confirmation of Settlement Payments disbursed, negotiated, or otherwise executed, and (d) confirmation of completion of obligations under federal, state, and/or local tax laws related to disbursements from the Settlement Fund for Settlement Payments;

e. making all arrangements necessary to establish and maintain the Settlement Fund as a "qualified settlement fund" for federal tax purposes within the meaning of Treas. Reg. § 1.468B-1 and to enable deposits to and disbursements from the Settlement Fund, including by wire transfer and check;

f. making disbursements from the Settlement Fund for any Service Awards, any Fees and Costs Award, and Settlement Administration Expenses;

g. calculating the amounts of Settlement Payments to be disbursed from the Settlement Fund to Settlement Class Members in accordance with Exhibit A hereto and this Agreement;

h. issuing and transmitting Settlement Payments in accordance with this Agreement;

i. placing a stop-pay order on all Settlement Payments made by check that are not negotiated within one hundred twenty (120) days of the issue date;

j. timely performing all tax reporting duties and timely issuing and transmitting all documents required by governmental tax authorities in connection with disbursements from the Settlement Fund made pursuant to this Agreement for (a) any Service Awards, (b) any Fees and Costs Award, and (c) Settlement Payments; this will also include timely advising QLS of its payroll tax obligations that are owing and due on the wage portion of the settlement proceeds, processing that separate check from QLS, and ensuring that QLS's portion of the employer's payroll taxes are remitted to the appropriate taxing agencies;

k. responding timely to requests for information concerning the Settlement or this Agreement made by Plaintiffs or Class Members and directing any objections to the Settlement and this Agreement to the Court;

l. responding timely to communications to the Settlement Administrator from Plaintiffs' Counsel or Defendants' Counsel;

m. certifying the completion of the administration of the Settlement in a written declaration under oath submitted to the Court, Plaintiffs' Counsel, and Defendants' Counsel; and

n. performing such other tasks as this Agreement specifically assigns to the Settlement Administrator or agreed to by Plaintiffs' Counsel and

Defendants' Counsel as necessary to effectuate and implement the terms of this Agreement.

4. **Settlement Payments**. In full settlement of all claims pled on behalf of the Class Members, Defendant shall pay a settlement payment totaling One Million, One Hundred and Fifty Thousand Dollars ($1,150,000.00) (the "Settlement Payment") as payment of all sums due under the settlement in the manner described below.

   a. **Method of payment:** By February 1, 2025 or thirty (30) days after the Court's final approval of this settlement agreement, whichever is later, Defendants will pay the gross amount ("Gross Settlement Amount") of $1,150,000.00, pursuant to wire instructions provided in writing by the Settlement Administrator, to be deposited into the Settlement Fund.

   b. **Initial NMMWA Class Distribution Payments**: The parties agree that $733,597.87 of this Gross Settlement Amount will be for compensation of gross wages, liquidated damages, and interest to the persons listed in Attachment A (the Class Members) in the amounts listed therein. The parties agree that it is reasonable and consistent with the facts and evidence in this case, as well as the the statutory right of recovery for unpaid overtime wages, double damages, interest, fees and costs, as set forth in the New Mexico Minimum Wage Act, NMSA 1978, § 50-4-19 *et seq* (2024) and the allocation of the same as applied to the overall settlement amount, that 27% of those payments will be paid for gross wages and 73% will be paid for liquidated damages and interest. These amounts are listed in Attachment A. These initial distributions will be made to

the best known address for all class members listed in Exhibit A within fourteen days after the Gross Settlement Amount is deposited into the Settlement Fund.

c. **Initial FLSA Collective Action Distribution Payments:** The parties agree that $1,311.48 of this Gross Settlement Amount will be for compensation of gross wages and liquidated damages of Jasmine Padilla and Teresa Benavidez. Jasmine Padilla will receive the amount $1,165.18 and Teresa Benavidez will receive the amount $146.31. The parties agree that it is reasonable and consistent with the facts and evidence in this case, and consistent with state and federal wage and hour law, that 50% of these payments to Jasmine Padilla and Teresa Benavidez will be paid for gross wages and 50% will be paid for liquidated damages. These initial distributions will be made to the best known address for the persons listed within fourteen days after the Gross Settlement Amount is deposited into the Settlement Fund.

d. **Representative Plaintiff Incentive Award** – The parties agree that of this Gross Settlement Amount, Defendants will pay to the Plaintiffs and Class Representatives the following: (1) the amount of $14,000 to Jorge Golden; and (2) $10,000 to Anthony Ybarra. These amounts constitute a representative incentive award. The Settlement Administrator will distribute these amounts by check to Plaintiffs' Counsel by mail or courier within fourteen days after the Gross Settlement Amount is deposited into the Settlement Fund.

e. **Attorneys' Fee, Gross Receipts Tax, and Costs** – The parties agree that of this Gross Settlement Amount, Defendants will pay to the Plaintiffs and Class Representatives the following: $367,454.57 for attorney's fees and $16,636.07

in costs ($9,182.42 in costs + $7,453.65 in class administration costs to date).[1] The Settlement Administrator will distribute these amounts by check to Plaintiffs' Counsel by mail or courier within fourteen days after the Gross Settlement Amount is deposited into the Settlement Fund.

f. **Settlement Administration Costs** – The parties agree that of this Gross Settlement Amount, the Settlement Administrator will deduct $7,000 for the costs of administering the process listed in this paragraph.

g. **Limited Reversion** - There shall be no reversion of unclaimed settlement funds with one limited exception.

   i. **Total Damage Awards** – For purposes of this paragraph, "Total Damage Awards" will mean the gross total amount of gross wages (prior to any payroll deductions), liquidated damages, and interest which are designated for each class member.

   ii. **Total Damage Awards to class members in an amount less than $500 which are uncashed After 120 Days** – Within one hundred and twenty (120) days after issuance of the distribution by the Settlement Administrator as listed above, the Settlement Administrator will inform Plaintiffs and Defendants and the Court the total amount of unclaimed funds that were sent out to class members with Total Damage Awards less than $500. Within thirty (30) days of notification, the Settlement Administrator will distribute this amount to Defendants' counsel which will revert back to Defendants.

---

[1] Plaintiffs' counsel, Christopher Benoit, will pay gross receipts tax on his portion of the attorney fee award independently of the Gross Settlement Amount and will not deduct from Plaintiffs or class members' funds.

      **iii. Total Damage Awards to class members in an amount more than $500 which are uncashed After 120 Days** – Within one hundred and twenty (120) days after issuance of the distribution by the Settlement Administrator as listed above, the Settlement Administrator will inform Plaintiffs and Defendants and the Court the total amount of unclaimed funds that were sent out to class members with Total Damage Awards more than $500. Within thirty (30) days of notification, Defendants will wire an additional amount to the Settlement Administrator in the amount of all such unclaimed funds. The Settlement Administrator will reduce the amount received by any costs incurred by the Settlement Administrator to send out a second distribution. The Settlement Administrator will then redistribute the remaining funds to those class members who have cashed their settlement checks – dividing such aggregate unclaimed amounts proportionate to each claiming class member's percentage share of the payments as listed in Exhibit A. The Settlement Administrator will finalize this redistribution within 30 days of receipt of the amount identified in this paragraph. Regardless of the amount, any class member who has not cashed their check by 120 days after mailing will be deemed to have forfeited their right to any damage award.

5.     **Calculation.** The parties agree that the allocations listed in Exhibit A are calculated by allocating to each Settlement Class Member from the Net Settlement Amount an amount in accordance with the pro rata percentage shown based on the number of hours that they worked for Defendants during their employment. These percentages are shown in column F of Exhibit A.

6. **Agreement of Notice**. The parties agree to the form and substance of the Notice of Settlement of Class Action which is attached to this Agreement as Exhibit B, pending the Court's approval.

7. **Cooperation of the Parties and Court Approval**. Plaintiffs will file – within a reasonable period of time after execution of this Agreement – Parties' Joint Motion for Approval of Class Settlement and Approval of Attorney's Fees ("Joint Motion"). The Parties agree that in the Joint Motion they will seek: (1) preliminary approval of this Agreement, including all material terms; (2) approval of the Notice in substantially the form as Exhibit B; (3) the method of dissemination of the Notice described herein as reasonable, adequate, and sufficient notice to Class Members, constituting the best notice practicable under the circumstances; and (4) setting a Final Approval Hearing at least 45 days out from the date of service of the Notice upon Class Members. Upon approval of the Joint Motion, the Settlement Administrator will transmit the Notice as approved by the Court to all Class Members by first class U.S. mail within fourteen days. The parties also agree to cooperate as reasonably necessary to obtain court approval of this settlement in presenting the relevant motion. The parties agree that the Settlement Agreement in its entirety is conditioned on the Court's approval of the Joint Motion and approval of this Agreement without material modification following the Fairness Hearing described herein.

8. **Enforcement of Agreement**. Should Defendants fail to make all payments as required in section 1 within the time period specified, the parties agree that Plaintiffs may take action to enforce the terms of this Agreement and that the prevailing party in such enforcement action shall be entitled to recover its reasonable attorneys' fees and costs incurred in bringing such enforcement action.

9. **Dismissal of Lawsuit.** Within five days after the payment is made in paragraph 4(a), Plaintiffs will move the court to dismiss the lawsuit in its entirety and with prejudice.

10. **Release**.

   a. **Class Members**: Class Members listed in Exhibit A, with full understanding of the contents and legal effects of this Agreement, completely and voluntarily release Defendants from any and all wage-and-hour-related claims, rights, demands, liabilities, and including causes of action arising under *the New Mexico Minimum Wage Act*, NMSA 1978 § 50-4-22 *et seq.* The individuals listed in Exhibit C with full understanding of the contents and legal effects of this Agreement, also completely and voluntarily release Defendants from any and all wage-and-hour-related claims, rights, demands, liabilities, and including causes of action arising under *the Fair Labor Standards Act,* 29 U.S.C. § 201, *et seq.*

   b. **Named Plaintiffs:** Named Plaintiffs Jorge Golden and Anthony Ybarra, for themselves, their heirs, successors and assigns, releases, acquits and forever discharge April Licon, Sally Chavez, and Quality Life Services from any and all claims, actions, demands, causes of action, rights, debts, damages or accountings of any nature whatsoever which they (individually or collectively) ever had or may now have, whether known or unknown, including but not limited to any claims that were or could have been asserted in the Lawsuit, and any claims arising under any federal, state or local laws, prohibiting discrimination in employment of any kind and nature, any claims for breach of contract, wrongful or abusive termination,

discrimination, retaliation, defamation and personal injury, any wage and hour claims under state, federal or common law, and including any claims for back wages or future wages, any kind of leave, bonuses, costs, liquidated damages, punitive damages, or attorneys' fees. This release for Named Plaintiffs applies to all such claims that could have been asserted prior to execution of this Agreement.

11. **No Tax Advice.** All Plaintiffs and Settlement Class Members who receive a Service Award, Settlement Payment and/or any other remuneration pursuant to this Agreement shall be responsible for (a) obtaining advice from a qualified tax professional concerning their obligations with respect to reporting and paying taxes required by governmental tax authorities and (b) ensuring that all tax obligations, and all obligations with respect to such matters as liens and garnishments, are met. No advice concerning the obligations of Plaintiffs or Settlement Class Members who receive a Settlement Payment and/or any other remuneration pursuant to this Agreement has been or will be provided by Defendants, Defendants' Counsel, or Plaintiffs' Counsel; nor shall any of the foregoing persons or entities have any liability for any errors, issues, disputes, claims, demands, actions, losses, or consequences of any kind arising from, on account of, or in any way related to the tax consequences of this Agreement, other obligations such as liens and garnishments, or eligibility for government benefits of any kind.

12. **Consent**. All Parties have carefully read this Agreement, and the contents hereof are known and understood by all Parties. The Parties have each received independent legal advice from attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement. Prior to the execution of this Agreement by each party, each party's attorney has

reviewed the Agreement and each party acknowledges that such party has executed the Agreement after independent investigation and without fraud, duress, or undue influence.

13. **Successors.**  Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective Parties to this Agreement.

14. **Negotiated Agreement**.  This Agreement and each of its terms constitutes a negotiated contract and not merely a recital and are the result of negotiation among the Parties.  In interpreting this Agreement, there shall not be a presumption of interpretation against any party.

15. **Warranty of Authority**.  Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the party for whom he or she purports to sign it.

16. **Applicable Law**.  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the domestic laws of the State of New Mexico without regard to conflicts of laws principles.

17. **Further Actions**.  The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence, or confirm the agreements contained herein in the manner contemplated hereby.  Defendant and Plaintiff mutually agree to cooperate to ensure the expeditious approval and administration of this settlement.

18. **Joint and Several Liability.** Defendants April Licon, Sally Chavez, and Quality Life Services, LLC are jointly and severally liable for the payments listed in paragraph 4.

19. **Continuing Court Jurisdiction**.  The Court shall have continuing jurisdiction to supervise and enforce the settlement set forth in this Agreement.

20. **Modifications.** As approved by the Court, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties and executed in the same manner as this Agreement.

21. **Execution.** This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

22. **Entire Agreement.** This Agreement and the exhibits hereto embody the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein and is a fully integrated contract.

23. **Binding.** In the event this Agreement is not finally approved by the Court, no party will be bound to this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereby execute this Agreement.

_____     _____
XXX on behalf of Quality Life Services, LLC


_____     _____
April Licon


_____
Sally Chavez

_____/s/_____     _____7-16-24_____
Jorge Golden                             Date

_____/s/_____     _____7-16-24_____
Anthony Ybarra                           Date

14