**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **JORGE GOLDEN and ANTHONY YBARRA, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CA No. 2:22-cv-579-GJF-GBW** |
| | § | |
| **QUALITY LIFE SERVICES, LLC, APRIL LINCON AND SALLY CHAVEZ, INDIVIDUALLY,** | § § § | |
| | § | |
| **Defendants.** | § | |

<u>**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**</u>

Plaintiffs Jorge Golden and Anthony Ybarra move the Court for an Order approving Class Counsel's attorneys' fees of $367,454.57 and costs of $16,636.07 and in support would show as follows:

## I.     INTRODUCTION

While the Fee Agreement between Class Counsel and their clients provides for a contingency fee of 40%, the Settlement Agreement negotiated by the Parties provides for payment of a contingency fee of 33% of the Total Settlement Amount.  Exhibit 1, Settlement Agreement; Exhibits 3 and 4, Declarations of Chris Benoit and Douglas Welmaker.

As set forth below, Class Counsel contends that the Settlement Agreement percentage of 33% represents a reasonable fee and should be approved by the Court.  As noted in the Settlement Agreement, Defendants agree the amount is reasonable. *Id.*

During the past two years of litigating this case, Class Counsel have not been paid for their services.   Exhibit 3, ¶¶21, 24; Exhibit 4, ¶¶11,13. This unpaid work to date includes: (1)

interviewing witnesses and selecting class representatives; (2) preparing and filing the complaint and amended complaints; (3) preparing and filing one motion for conditional certification and two motions for class certification, and analyzing and responding to responses to same as well as preparing reply briefs; (4) preparing and responding to written discovery, which included filing multiple motions to compel, and analyzing and responding to Defendants' responses to same; (5) preparing for and taking depositions of Defendants' corporate representative and multiple employees; (6) preparing for and presenting plaintiffs for their depositions; (7) preparing a motion for contempt and analyzing and responding to Defendants' response; (8) engaging in extensive formal discovery and informal discovery for purposes of mediation; (9) reviewing and analyzing all documents produced related to class member pay; (10) reviewing and analyzing all documents produced regarding Defendants' policies and procedures as they related to DSPs; participating in extensive settlement discussions; (11) preparing and circulating a detailed mediation statement and damages model; (12) analyzing and preparing rebuttal arguments to mediation positions; (13) participating in a face-to-face mediation facilitated by Chief Magistrate Judge Wormuth; (14) preparing and drafting settlement papers including motions for preliminary approval; and (15) overseeing the Claims Administrator throughout the course of the three notices provided to the class members in this matter.   Exhibits 3, 4.  In addition, Class Counsel advanced all litigation expenses and taxable costs on behalf of the Class in pursuit of their claims.  *Id.* Class Counsel have been without compensation and their entitlement to any compensation at all has been wholly contingent on obtaining recovery for the Plaintiffs. *Id.*

Separately, the parties have filed a Joint Motion for Approval of the Settlement Agreement. ECF No. 194.  The Settlement Agreement provides that Class Counsel will recover attorneys' fees, litigation expenses and taxable costs. Exhibit 1.   The Settlement Agreement provides express

authority for the requested fees and expense awards. *Id.* As noted, the requested fee percentage, 33% of the Settlement Amount, is lower than the percentage set forth as the contingency fee negotiated between Plaintiffs and Class Counsel. Additionally, in the Settlement Agreement, Defendants agreed that a fee award of 33% of the Total Settlement Amount was "reasonable." *Id*.

## II.      ARGUMENTS AND AUTHORITIES

### A.      The Tenth Circuit and District Courts in the Tenth Circuit Overwhelmingly Use the Percentage of Fund Method to Determine Reasonable Fees.

Under Fed. R. Civ. P. 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." In 2003, Rule 23(h) was adopted to more specifically address fee awards in the class action setting. Rule 23(h) states, in relevant part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law ...." Fed. R. Civ. P. 23(h). Generally, the Tenth Circuit reviews a district court decision awarding attorneys' fees for an abuse of discretion. *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1148 (10th Cir.1990).

The court in *Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1241 (D.N.M. 2016) noted that "[T]here are two generally accepted means for awarding attorneys' fees in class action suits, the so-called lodestar method—determining fees based on the hours worked and a reasonable hourly fee—and the percentage-of-the-fund method—awarding fees based on a reasonable percentage of the overall award." (citing to *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091 (D.N.M. 1999) and Alan Hirsch & Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation 63–67 (Federal Judicial Center 1994)).

In class actions, the district court has broad authority over awards of attorneys' fees. *Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1241 (D.N.M. 2016) (citing *Law v. Nat'l Collegiate Athletic Ass'n*, 4 Fed.Appx. 749, 751 (10th Cir. 2001). Often, when a fund is created

for the benefit of a class, either through settlement or a judgment, the common fund doctrine is used as a method for proportionately spreading payment of attorneys' fees among class members. *Tennille v. Western Union Co.*, No. 09 CV 00938, 2013 WL 6920449, *4 (D. Colo. Dec. 31, 2013) (Tafoya, M.J.), adopted as modified, *Tennille v. Western Union Co.*, 2014 WL 5394624, *4 (D. Colo. Oct. 15, 2014) (Kane, D.J.) (unreported decisions), appeal dismissed, 809 F.3d 555 (10th Cir.2015).

"The award of attorneys' fees is based on substantially different underlying purposes in a common fund case than in a statutory fees case. The common fund doctrine 'rests on the perception that persons that obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (quotation omitted). Thus, the percentage award results "in a sharing of the fees among those benefitted by the litigation." *Id.*[1] In *Brown*, the Tenth Circuit directed that, in determining what percentage would be reasonable, courts should review the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *Brown*, 838 F.2d at 454; *see also Ramah Navajo Chapter*, 167 F. Supp. 3d at 1241 (same).

The Tenth Circuit has expressed a preference for determining the reasonableness of a fee award in a common fund case utilizing the percentage of recovery method. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Brown*, 838 F.2d at 454. Courts in this District have

---

[1] This is consistent with Supreme Court precedent. For over 40 years, the Supreme Court has held that when counsel obtain a common fund settlement, they may seek a reasonable attorneys' fee from the fund as whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.l6 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class.").

acknowledged this preference and rejected the application of lodestar analysis or a lodestar cross check when applying the percentage of fund method. As Judge Parker explained:

> The percentage of the fund method is the appropriate means to determine a reasonable fee ... a lodestar analysis would not be helpful in setting or even evaluating a reasonable percentage of the Common Fund.... The percentage approach is also more efficient. Importantly, it aligns the interests of class counsel with the interests of the class because the more the class recovers, the more class counsel recovers.

*Ramah Navajo*, 167 F. Supp. 3d at 1241–42.

Courts in New Mexico routinely approve awarding a percentage of the common fund without a lodestar cross check. *See, e.g., Barela v. Citi Corp*., No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M Sept. 15, 2014) (Judge Wormuth awarded percentage of fund totaling $133,333.33 in hybrid FLSA and Rule 23 wage and hour case without lodestar cross check); *J.O. v. Dorsey, et al*., No. 1:11-cv-254-MCA-GBW, ECF 157 (D.N.M. Nov. 19, 2014) *and Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *7, n. 5 (D.N.M. Apr. 9, 2021) (district courts in New Mexico routinely approve attorneys' fees based on a percentage of fund method without a lodestar cross-check, collecting cases).[2]

---

[2] District courts within the Tenth Circuit but outside of New Mexico also agree with this approach. *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 WL 7758915, at *9 (Mar. 8, 2019) (E.D. Okla. Mar. 8, 2019) (awarding 40% fee without lodestar cross check, explaining that the "lodestar method and lodestar cross-checks are a wasteful use of resources and are disfavored by the Tenth Circuit.") (collecting cases); *CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citing *Union Asset Mgmt. Holding A. G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)); *Fankhouser v. XTO Energy, Inc*., 2012 WL 4867715, *3 (W.D. Okla. Oct. 12, 2012) (awarding 36% without lodestar cross check); *Droegemueller v. Petroleum Devel. Corp*., 2009 WL 961539, *4 (D. Colo. Apr. 7, 2009) (awarding 33 1/3% without a lodestar cross check); *Lewis v. Wal–Mart Stores, Inc.*, 2006 WL 3505851, *2 (N.D. Okla. Dec. 4, 2006) (awarding 33 1/3% without calculating lodestar); *Williams v. Sprint/United Mgmt. Co.*, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding 35% fee without calculating lodestar); Peck v. Encana Oil & Gas, Inc., 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (37.5% fee without calculating lodestar in wage and hour hybrid action); *Farley v. Family Dollar Stores, Inc*., 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014) (30.3% fee without lodestar cross check in wage and hour hybrid action); *Chavez Rodriguez v. Hermes Landscaping, Inc*., 2020 WL 3288059, at *5 (D. Kan. June 18, 2020) (33% fee without calculating lodestar in wage and hour hybrid action); *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (fees and costs of 39% of the fund without lodestar analysis in wage and hour hybrid action without lodestar cross check) (citing Stuart J. Logan et al., Attorney Fee Awards in Common Fund Class Actions, 24 Class Action Rep. 167, 167 (2003) (reporting that the

This Court should follow the direction provided by the Tenth Circuit and other district courts in this Circuit and use the percentage of fund method for awarding Class Counsels' attorneys' fees in this case, without the additional time and expense of a cross check, and Defendant does not oppose this request.

**B.      The Requested Fee Award Is Well Within the Range of Percentage of Fund Awards.**

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Class Counsel's request for an award of attorneys' fees equal to 33% of the common fund is well within the range of prior percentage awards made by courts in this District and in the Tenth Circuit. *See, e.g., Montgomery v. Cont'l Intermodal,* 2021 WL 1339305, at *7, n. 6 (D.N.M. Apr. 9, 2021) (collecting cases), noting that counsel's requested fee of 31.47% (reduced from 33% because of 11 objectors) was well within the range approved by courts in the Tenth Circuit. *See also In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.").

Further, as this case is a hybrid FLSA collective action and Rule 23 class action, it is important to note that a 33% fee award is also consistent with the percentage of fund awards in hybrid Rule 23 state wage and hour/FLSA actions nationwide.[3]

_____

percentage of class recovery consumed by attorneys' fees in cases under $10 million averages between 30.4% and 31.9%, based on a survey of 1,120 cases).

[3] *See Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 472 (S.D.N.Y 2013) (awarding $1.617 million in attorneys' fees in $4.9 million common fund settlement of overtime claims) (citing *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); and *Clark v. Ecolab, Inc*., No. 07 Civ. 8623(PAC), 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait*, 2010

**C.      An Award of 33% of the Total Settlement Amount is Proper in the Tenth Circuit.**

In *Gottlieb*, the Tenth Circuit directed that in determining a reasonable fee in a common fund case, "the court must consider the twelve Johnson factors" originally set forth by the Fifth Circuit.  *Gottlieb*, 43 F.3d at 483 (citing *Johnson v. Georgia Highway Express. Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974):

The 12 *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee: (6) any prearranged fee -- this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation , and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client: and (12) awards in similar cases.[4]

Because the *Johnson* factors were developed in the context of a judgment in a case involving fee-shifting statute, the Tenth Circuit held that the scheme should be modified when applied in a common fund case to better fit the setting. *See Brown*, 838 F.2d at 456.  Not all factors will apply in every case. *Id*., at 456; *Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) (trial court need not specifically address each factor in every case). And the

---

WL 2025106, at *9 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and 13 state wage and hour law off-the- clock case); *Duchene v. Michael Cetta, Inc*., 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in hybrid tip misappropriation case); *Mohney v. Shelly's Prime Steak*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in hybrid wage case); *Abadeer, et al., v. Tyson, et al*. 3:09-cv-125 (M.D. Tenn. Oct. 17, 2014) (awarding fees in the amount of $2,583,333.00, which was equal to 33.33% of the common fund, in hybrid FLSA Rule 23 class action); *Braun v. Wal–Mart, Inc*., 2009 WL 1592532 (D. Minn. June 1, 2009) (38% fee award in a $54 million settlement)).

[4] *Id.* at 482, n.4

weight to each factor varies when the court is awarding fees from a common fund. *Brown*, 838 F. 2d at 456.

The most important difference in the application of the *Johnson* factors in common fund cases is the emphasis placed on the eighth factor—the result obtained by class counsel. In a common fund case, the result obtained is the most important factor and deserves the greatest weight. *Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."). As the Advisory Committee later put it when adopting the 2003 amendments to Rule 23, "[f]or a percentage fee approach to fee measurement, results achieved is the basic starting point." FED. R. CIV. P. 23(h) advisory committee's note (2003).

The other important difference in this common-fund context is the diminished role of the first *Johnson* factor—the time and labor involved.  In *Brown*, the Tenth Circuit recognized that the differences between common fund cases and statutory fee cases cautioned against importing a formal lodestar requirement—the usual starting point in statutory fee-shifting cases—into common fund cases. Accordingly, the Tenth Circuit recast the nature of the "time and labor" inquiry in common fund cases. While "time and labor" is a factor to be considered, the court need not conduct a lodestar analysis to assess it.

In the context of this case, the result achieved should be given the greatest weight in determining the reasonableness of the fee request. *Brown*, 838 F.2d at 456; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (quotations omitted); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547048 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), aff'd, 899 F.2d 21 (11th Cir. 1990).

8

Unlike many class action settlements that provide little if any actual monetary benefit to the class members, the settlement reached in this case provides real and substantial monetary recovery to the class. This is not a coupon settlement, but rather involves a significant cash recovery and with a substantial average payment per class member, despite the existence of serious disputes as to liability and hours worked.

Another way of comparing the fee request to the market for comparable legal services is to consider awards in similar cases (Johnson factor #12). The fee request in this case is consistent with what many federal courts in this Circuit have awarded in other class actions, and with what many federal courts across the country have granted in similar wage and hour lawsuits. *See* § 1-2, *supra*.

Seven of the Johnson factors examine, in different ways, Class Counsel's dedication of time, effort, and skill, and commitment to the case.[5] As noted above, these factors are less important in a common fund case (rather than a fee-shifting case) because the most important determinant of the lawyer's contribution—and therefore the most important factor in setting the fee—is the outcome the lawyer was able to achieve. *See Brown*, 838 F.2d at 456.

The other *Johnson* factors also support approval of the fee request. Although these factors do not merit as much weight as the results obtained factor, each one is addressed below.

1.      **Time and Labor.**

This is important in statutory fee-shifting lodestar cases, but only important here to show the case was not a "lay down" by any stretch of the imagination. The Declarations of Class Counsel

---

[5] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (7) any time limitations imposed by the client or the circumstances; (9) the experience, reputation and ability of the attorneys; and (10) the undesirability of the case.

shows both law firms invested substantial time and labor in researching, investigating, prosecuting, and resolving this case.   Counsel dedicated a total of 716.60 (436 for Benoit + 280.60 for Welmaker) hours litigating and negotiating the settlement of this case. Counsel submits the attached declarations substantiating these time expenditures.   They will incur even more hours if the Court approves settlement and they spend the necessary hours to finalize settlement and ensure proper distribution in the next months.

Mr. Benoit is a 15-year attorney who has handled numerous wage class actions and he typically bills at a rate of $400 per hour. Exhibit 3, Declaration of Christopher Benoit.   Mr. Welmaker is a 30-year attorney who has limited his practice to strictly wage and hour cases for the past 10 years who typically bills at a rate of $580+ per hour.   Exhibit 4, Declaration of Doug Welmaker.   Counsel's hourly rates are reasonable for attorneys with their background and experience in the New Mexico and West Texas market.   Exhibits 3, 4.

In addition, the costs in this matter are reasonable and total $16,636.07  ($9,182.42 in costs + $7,453.65 in class administration costs to date). Exhibit 2, Case Expenses Report. *See Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *8 (D.N.M. Apr. 9, 2021) (finding that Class Counsel's out-of-pocket litigation expenses and costs were appropriate) (citing to *Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 WL 6875828 at *4, 2020 U.S. Dist. LEXIS 207337 at *10 (D.N.M. 2020)). (in addition to awarding the cost of hiring a settlement administrator, court awarded class counsel all "actual out-of-pocket litigation expenses and costs incurred in prosecuting this case, including costs for court fees, electronic research, postage and courier fees, photocopies, and the fees of the private mediator[.]").

### 2.      Novelty and Difficulty.

While the independent contractor analysis does not require examination of novel issues, this litigation required additional analysis and planning on Counsel's part regarding the formulas and damage distributions to the class members. Accordingly, this case presented somewhat difficult and novel questions which Class Counsel represent they spent significant time navigating. Despite these hurdles, Class Counsel obtained a significant amount of recovery for the Class Members, and as such, this factor thus weighs in favor of the requested fee.

### 3.      Skill Required Requisite to Perform the Legal Service Properly.

Wage and hour class actions are governed by highly technical federal and state wage statutes and regulations, as well as developing case law. Counsel focuses their practice in this area and have, combined, over 25 years of experience litigating class cases for low-wage workers under state and federal wage law.  *See* Exhibits 3 and 4. Wage and hour litigation is somewhat of a "niche practice in this District" – underscoring the novelty and unique skills necessary to perform legal services properly in a wage and hour action. *Rodarte v. Bd. Of Cty. Comm'rs of Bernalillo Cty*., No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at \*10 (D.N.M. Aug. 28, 2015). As evidenced by the favorable result achieved, Counsel had the requisite skill to perform the legal service required in this litigation.

### 4.      Preclusion of Other Cases.

Class Counsel's time on this case could have been spent on other worthwhile cases. Courts in this Circuit have recognized the inherent preclusion of other work implicit in litigating large and complex class actions on behalf of workers in wage and hour cases.[6] Here, Class Counsel explain

---

[6] *See e.g. Whittington v. Taco Bell of Am., Inc.,*, 2013 WL 6022972, at \*6 (D. Colo. Nov. 13, 2013) ("Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly

that they spent significant time and resources on this case, remuneration for which was entirely contingent on the outcome of this matter. This factor also favors approving the percentage fee award because Class Counsel could have spent those hours on guaranteed fee-generating work.

### 5. Customary Fee.

"Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel."[7] Plaintiffs and Class Counsel negotiated and agreed to prosecute this case based on a 40% contingent fee, which has now been reduced to a 33% contingent fee. This fee represents the market rate and is in the "customary fee." This agreed-upon fee supports the reasonableness of the fee factor and thus favors a finding that the plaintiff's fee request is reasonable. *Bailes v. Lineage Logistics, LLC*, No. 15-2457-DDC-TJJ, 2017 WL 4758927, at *6 (D. Kan. Oct. 20, 2017). As established above, the requested fee award is well within the customary fee awarded in wage and hour class action litigation.

### 6. Whether the Fee is Fixed or Contingent.

Class Counsel represented Plaintiffs on a contingency fee basis. Had Plaintiffs not resolved their claims or not prevailed at trial, counsel would have received nothing. Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees: if Class Counsel lose class certification or the merits, that is thousands of hours and many dollars down the drain. Even winning, class counsel may not get paid at all. Although Class Counsel argue that they were able to achieve an excellent result for the class, achieving the outcome was anything but certain when they agreed to take the case on a contingency fee basis. "This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large

---

working on paid hourly wages. There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts.")
[7] *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015).

investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Acevedo*, 2019 WL 6712298, at *5 (collecting cases).

### 7.    Time Limitations Imposed by the Client or Circumstances.

Class Counsel committed to this case knowing that it could be vigorously fought for years and cause significant limitations on Class Counsel's two small wage and hour firms, which collectively employ less than three attorneys, from representing the class. Had the settlement not occurred, the case may have taken many more years to get to trial; it also avoids potential appeals on the merits that would have been taken following trial. Accordingly, this factor weighs in favor of approving the fee, as Class Counsel have committed themselves to representing the Class, despite the known probability of years of litigation and potential appeals.

### 8.    Amount in Controversy and Result Obtained.

As noted above, this is the most significant factor in awarding attorneys' fees in a common fund case. Here, Class Counsel obtained a substantial payment on behalf of the Class Members comprising full actual damages and a portion of liquidated damages for each class member. "Class counsel obtained this result despite serious questions as to whether the class could be certified under Fed. R. Civ. P. 23, whether the class could ultimately prevail on the merits of its claims, and what amount of damages would be available. Given the risks involved, the Court should find that the relief provided by the settlement represents an excellent result for the settlement class." *Blanco v. Xtreme Drilling & Coil Services, Inc*., 16-CV-00249-PAB-SKC, 2020 WL 4041456, at *6 (D. Colo. July 17, 2020).

### 9.    Experience, Reputation, and Ability of Counsel.

This factor is intended to reward counsel for devoting the talent, experience, and specialization necessary to successfully try a complex class action case. *Johnson*, 488 F. 2d at 718-

19. Class Counsel represent that they have extensive experience and demonstrated ability litigating wage and hour collective and class actions. Class Counsel's knowledge and experience significantly contributed to a fair and adequate settlement of this litigation. This factor supports the requested percentage fee award.

### 10. Undesirability of the Case.

Because Plaintiffs did not have the resources to hire counsel, Class Counsel contend that this case could only have been litigated via a contingency fee agreement. The "undesirability" of this case to the bar is heightened by the complexity of the legal issues involved and because, under Defendant's theory of the case, Plaintiffs and the Class members would have been owed zero. Moreover, the legal theories involved required substantial expertise in the wage and hour field—which most attorneys lack—which would have prevented them from understanding the nuances of the arguments asserted, determining whether the Plaintiffs may have had viable claim, or evaluating the potential damage awards available to the Class Members in this case. Accordingly, this factor weighs in favor of approving the requested fee.

### 11. Nature and Length of Professional Relationship with Client.

Class Counsel's position is that this factor is meant to reflect any discounted rate that a lawyer might ordinarily charge a long-standing client from whom the lawyer might expect continued or repeated business. *Johnson*, 488 F. 2d at 719. Here, Class Counsel had no previous relationship with the class or the class representatives.

### 12. Awards in Similar Cases.

A review of fee awards in other class action lawsuits and wage and hour lawsuits in particular, including hybrid suits, establishes the requested percentage fee award is well within the range of such awards. *See* section B, *supra*.

Because the *Johnson* factors weigh in favor of approving the specific percentage requested as the fee award and the percentage is well within the general approved range for similar complex class action cases, the request for 33% of the common fund is reasonable and should be approved by the Court. Defendants have indicated their agreement that the requested fee is reasonable and does not oppose Plaintiffs' request in this regard.

## II.   CONCLUSION

Because the fee award satisfies all of the *Johnson* factors, because Counsel litigated this case thoroughly and because Counsel negotiated a settlement that will greatly benefit the Class Members, the fee award should be approved.

Respectfully submitted,

**WELMAKER LAW, PLLC**

*/s/ Douglas B. Welmaker*
**Douglas B. Welmaker**
New Mexico Federal Bar ID 22-213
409 North Fredonia, Suite 118
Longview, Texas 75601
Tel: (512) 799-2048

AND

**BENOIT LEGAL, PLLC**
The Law Center
311 Montana, Suite B
El Paso, Texas 79902
(915) 532-5544
Fax (915) 532-5566

*/s/ Christopher Benoit*
**Christopher Benoit**
New Mexico No. 15097
chris@coylefirm.com

15

**CERTIFICATE OF CONFERRAL**

Counsel conferred with counsel for the Defendants on July 8, 2024 regarding the relief sought in this Motion. Defendants do not oppose the relief requested.

/s/ *Douglas B. Welmaker*
DOUGLAS WELMAKER

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court on July 17, 2024 using the electronic system, which will send notification of such filing to all parties entitled to notice.

/s/ *Douglas B. Welmaker*
DOUGLAS WELMAKER